Filed 10/31/25  P. v. Parrish CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B335071 |
| | (Super. Ct. No. 22F04712) |
| Plaintiff and Respondent, | (San Luis Obispo County) |
| v. | |
| BRADLEY NORMAN PARRISH, | |
| Defendant and Appellant. | |

Bradley Norman Parrish appeals from the judgment after a jury convicted him of the willful and malicious arson of forest land (Pen. Code,[1] § 451, subd. (c); count 1).  In a bifurcated trial, Parrish admitted four prior felony arson convictions (§ 451.1, subd. (a)(1)) and three prior strike convictions (§§ 667, subds. (b)–

---

[1] Undesignated statutory references are to the Penal Code.

(i), 1170.12, subds. (a)–(d)).  The trial court sentenced Parrish to 25 years to life.

Parrish contends the judgment should be conditionally reversed because the court erred in not holding a hearing to substitute new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  He also contends the court imposed an unauthorized sentence when it imposed but stayed the enhancements for a prior serious felony (§ 667, subd. (a)) and prior felony arson convictions (§ 451.1, subd. (a)(1)).  Parrish further contends the abstract of judgment incorrectly includes fines and fees the court struck because it found Parrish could not pay.  We strike the enhancements for prior convictions and correct the errors in the abstract of judgment but otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

At an October 4 pretrial hearing, defense counsel declared a doubt about Parrish's competence to stand trial.  Counsel believed Parrish was "in a manic phase."  Parrish interrupted, stating, "[Y]ou're not a psychiatrist," and told the trial court, "I don't know why he's going against my will. . . . I would like to dismiss him as my lawyer if that's possible."  The court said, "We can potentially talk about that.  At this point, though, he is your attorney.  And having declared a doubt about your competence, I have very limited options."  Parrish countered, "Do I seem incompetent to you?"  The court said, "[Y]ou don't—right now— [¶] . . . [¶] other than you're interrupting me constantly and I need to make a record."

The court continued, "So my options are limited.  And as you pointed out, we are not doctors, so I am going to appoint a doctor to evaluate you."  Parrish interrupted the court, and it

2

admonished him, stating, "Don't interrupt me." Parrish then interrupted his lawyer, and the court remarked that Parrish "seem[ed] a little agitated."

Parrish then asked the court, "Will you at least read my letter I wrote to you?" His counsel objected, and Parrish interrupted, stating, "I don't care what you want, Ray. Quit talking for me." The court noted that Parrish was "constantly interrupting" but would "hear from [Parrish] briefly." Parrish said, "If you tell him to shut up," referring to his lawyer. The court said it would not, and Parrish stated, "He's my lawyer. I don't want him screwing things up for me. [¶] . . . [¶] He's a terrible lawyer."

The court said it was appointing a doctor to evaluate Parrish because his lawyer had "declared a doubt." (§§ 1368, 1369, subd. (a)(1).) Parrish responded, "No, he hasn't. He's fired. I don't want him in my corner anymore. He's terrible." The court said, "Well, we can discuss that issue in the future." It scheduled a hearing for three weeks later to receive the doctor's report.

Parrish again interrupted the court, stating he was not "sitting in jail for another three weeks because my lawyer thinks I am manic." He continued to interrupt, stating, "I'm getting angry." The bailiff admonished Parrish to "[p]lease stop talking." Parrish said he was "sitting in jail for three months over a bogus fucking arson charge." He added, "I would like to fire, and I'm getting really tired of the way you people are shoving me around like an animal in a cage. I'm really getting sick of this bullshit."

The court again admonished Parrish, stating, "Well, sir, now it's appearing to me that you may very well not be competent to stand trial. You're not able to follow the directives I'm giving you, and if you continue to interrupt me, we're going to have Mr.

Parrish taken from the courtroom. Do you want to stay?" Parrish said he did. The court suspended criminal proceedings and said, "And we can—once we've dealt with that issue, we can deal with the issue of whether [present counsel] will continue to be your attorney, but I need to get the report before I do that."

Parrish said he did not want to wait three weeks before returning to court. He said the court could "ignore" what his lawyer had said. The court said it could not "after the way you've behaved today." Parrish responded, "I'm behaving just fine. It's you people that are out of your fucking minds." The court then had Parrish removed from the courtroom, stating, "I'm sorry. Don't cuss in my courtroom. You're being removed now." Parrish asked the court to read "this," referring to his letter, and the court said, "We'll see you on the 25th. No, I'm not going to read it now." Parrish then referred to the court as a "pussy bitch." A case docket entry reflects, "The Court removes Defendant from Courtroom due to outburst."

The parties returned to court on October 25. Parrish did not renew his request for a *Marsden* hearing. Instead, he read his letter to the court. He also agreed to cooperate with meeting a doctor for a competency evaluation. He thanked the court. At the end of the hearing, Parrish said, "Good seeing you, Ray."

The parties returned to court for receipt of the doctor's report, but the hearing was continued because Parrish was "not cooperating in removal from his cell and appear[ed] to be evidencing acute psychotic symptoms." A few weeks later the parties returned to court with Parrish present. The parties submitted on the doctor's report and the court committed Parrish

to the state hospital for competency restoration.  Parrish again thanked the court.

Parrish was later found competent to stand trial and the court reinstated criminal proceedings.  He waived his speedy trial rights.  The parties then appeared in court on 19 separate occasions, including March 14, April 4, May 9, May 23, and June 13; on July 6 when Parrish agreed to withdraw his plea of not guilty by reason of insanity; on July 11 when he agreed to bifurcate trial on his prior arson convictions; on July 13 when he agreed with his lawyer's decision to not object to a 20-page transcript of a statement made by Parrish to a law enforcement officer; a five-day jury trial held on July 14, 17, 18, 19, and 20; on July 21, when Parrish admitted the alleged prior arson and strike convictions; and additional posttrial hearings, including sentencing, on September 19, November 7, December 12, January 23, and January 25.  At no point did Parrish renew his request for a *Marsden* hearing.  And at no time did Parrish express dissatisfaction with his lawyer.

The jury convicted Parrish of the willful and malicious arson of forest land (§ 451, subd. (c); count 1) and acquitted him of recklessly burning forest land (§ 452, subd. (c); count 2).  In a bifurcated trial, Parrish admitted four prior felony arson convictions (§ 451.1, subd. (a)(1)) and three prior strike convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).  The court denied a motion to strike the priors pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  It imposed but stayed the enhancements for a prior serious felony (§ 667, subd. (a)) and prior felony arson convictions (§ 451.1, subd. (a)(1)).  It stayed the punishment for these enhancements because of the "overarching mitigating character of the mental illness that I

5

think is at play here." It sentenced Parrish to 25 years to life, which it found "more than adequate punishment."

## DISCUSSION

### *Abandonment of* Marsden *request*

Parrish contends we should conditionally reverse the judgment because the trial court did not conduct a *Marsden* hearing on October 4. He requests we direct the trial court to conduct a *Marsden* hearing and order a retrial if the *Marsden* motion is granted. We decline to do so.

A criminal defendant is "entitled to competent representation." (*People v. Smith* (1993) 6 Cal.4th 684, 690). A defendant may move to substitute appointed counsel pursuant to *Marsden*, *supra*, 2 Cal.3d 118 either pre- or postconviction. (*Smith*, at p. 694.) The decision whether to grant the defendant's motion " 'is within the [sound] discretion of the trial court.' " (*Id.* at pp. 690–691.) Before exercising that discretion the court "must give the defendant the opportunity to explain the reasons for desiring a new attorney," and " 'must consider any specific examples of counsel's [alleged] inadequate representation . . . the defendant wishes to enumerate.' " (*Id.* at p. 690.) A "defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Smith* (2003) 30 Cal.4th 581, 604.)

A formal *Marsden* motion is not required. A defendant need only "clearly indicate to the trial court 'in some manner' that he or she is requesting the discharge and replacement of the appointed counsel.' " (*People v. Armijo* (2017) 10 Cal.App.5th 1171, 1178 (*Armijo* ).) "[O]nce the defendant clearly indicates to

6

the trial court a request for the discharge and replacement of appointed counsel, the court must hold a hearing to allow the defendant to explain the basis for the request." (*Id.* at p. 1179.)

Denial of a *Marsden* hearing "is legal error that compels reversal of the defendant's conviction unless the record shows beyond a reasonable doubt that the error was harmless." (*Armijo, supra*, 10 Cal.App.5th at p. 1179.) A *Marsden* hearing is required even when counsel declares a doubt about the defendant's mental competency and the trial court suspends criminal proceedings. (*People v. Govea* (2009) 175 Cal.App.4th 57, 61.) "Hearing a *Marsden* motion during a competency hearing does not reinstate criminal proceedings against the defendant." (*People v. Solorzano* (2005) 126 Cal.App.4th 1063, 1069.)

However, a defendant who makes a timely *Marsden* motion may abandon their request by their postmotion conduct. (*People v. Vera* (2004) 122 Cal.App.4th 970, 981–982 (*Vera*); *People v. Jones* (2012) 210 Cal.App.4th 355, 361 (*Jones* ).

In *Vera*, the defendant made a *Marsden* motion and began listing some of the reasons he believed his counsel was ineffective. (*Vera, supra*, 122 Cal.App.4th at p. 975.) The trial court heard several of the defendant's concerns but concluded the hearing and denied the motion without prejudice because a jury in another matter was waiting to enter the courtroom. (*Id.* at p. 976.) "[T]he trial court offered defendant the opportunity for a further hearing," but the defendant did not renew his *Marsden* motion. (*Vera*, at pp. 977, 981.) The Court of Appeal concluded the defendant abandoned his *Marsden* motion, reasoning, "While we are aware of no precedent finding abandonment of a *Marsden* motion, it is established that a defendant's conduct may amount

7

to abandonment of a request to represent himself under *Faretta v. California* (1975) 422 U.S. 806. [Citations.] If a defendant can abandon his request to substitute himself for counsel, a defendant can abandon his request to substitute another counsel. We conclude that defendant abandoned his unstated complaints about counsel by not accepting the court's invitation to present them at a later hearing." (*Vera*, at pp. 981–982.)

In *Jones*, the defendant filed a *Marsden* motion on April 15, and the court stated it would hear the motion on April 27. The trial and *Marsden* motion were then continued several times. (*Jones, supra*, 210 Cal.App.4th at p. 360.) But the defendant "never again brought the matter to the trial court's attention despite having been present in court a dozen times before his trial began." (*Id*. at p. 362.) The Court of Appeal rejected the defendant's contention that the trial court erred in not conducting a *Marsden* hearing because the defendant "had the duty of bringing his motion to the trial court's attention at a time when the oversight could have been rectified. [Citation.] We conclude defendant's failure to raise the issue before the matter proceeded to trial constituted abandonment of his claim." (*Jones*, at p. 362.) *Jones* relied on the forfeiture rule discussed in *People v. Braxton* (2004) 34 Cal.4th 798, 814, which held that a defendant could forfeit a motion for a new trial "by failing to press for a hearing or by acquiescing in the court's failure to hear the new trial motion." "[A] party may not challenge on appeal a procedural error or omission if the party acquiesced by failing to object or protest under circumstances indicating that the error or omission probably was inadvertent." (*Id*. at pp. 813–814.)

Here, Parrish "clearly" indicated on October 4 that he wanted to discharge his attorney after he declared a doubt.

Parrish stated, "I would like to dismiss him as my lawyer if that's possible." The trial court did not expressly decline to hold such a hearing. Nor did the court expressly deny Parrish's request. The court said, "We can potentially talk about that," and said that it had "very limited options." It set a date three weeks later for receipt of the doctor's report.

The parties returned to court on October 25. But rather than request a *Marsden* hearing, Parrish asked the court to let him read the letter he referred to on October 4. While criminal proceedings had been suspended, the trial court allowed Parrish to read his letter out loud.

The letter did not suggest Parrish wanted to fire his attorney. Nor did the letter suggest Parrish was dissatisfied with his lawyer. By all accounts, Parrish had jettisoned his request for a *Marsden* hearing.

Nor did Parrish request a *Marsden* hearing during the next 20 court appearances when he was personally present with his lawyer. Rather than request a *Marsden* hearing or express any dissatisfaction with his lawyer, Parrish waived time for a speedy trial, withdrew his plea of not guilty by reason of insanity, agreed to bifurcate trial on his prior arson and strike convictions, agreed with his lawyer's strategy to not object to evidence, attended his entire trial, did not object to his lawyer waiving an opening statement, admitted the alleged prior arson and strike prior convictions, and did not object to numerous continuances of his sentencing hearing. Parrish's conduct reflects a knowing acquiescence to his lawyer's assistance.

Here, the trial court's decision to wait for the doctor's report before holding a formal *Marsden* hearing had the same effect as denying the *Marsden* motion without prejudice, as in

9

*Vera.* And like the defendants in *Vera, supra,* 122 Cal.App.4th at pages 981–982 and *Jones, supra,* 210 Cal.App.4th at pages 361–362, Parrish's failure to renew his request constituted abandonment. (See also *People v. Skaggs* (1996) 44 Cal.App.4th 1, 7 [defendant abandoned purported request for self-representation by failing to raise it in subsequent proceedings and silently acquiescing to representation by appointed counsel].) Because we affirm the judgment on this basis, we do not reach the Attorney General's contention that any error was harmless. Reversal is not warranted.

*Sentencing errors*

Parrish contends the trial court erred when it imposed but stayed the enhancement for a prior serious felony (§ 667, subd. (a)) that was not alleged, and when it imposed but stayed an enhancement for prior felony arson convictions (§ 451.1, subd. (a)(1)). The Attorney General correctly concedes and additionally contends we can modify the judgment without a remand. We agree.

"A claim that a sentence is unauthorized . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court." (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6, citing *People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.) A sentence is unauthorized when it includes punishment for a prior serious felony enhancement (§ 667, subd. (a)) that was not alleged. (§ 1170.1, subd. (e); *People v. Anderson* (2020) 9 Cal.5th 946, 953.) It is also improper to stay the punishment for an enhancement, as opposed to striking it. (*Scott*, at p. 354, fn. 17; *People v. Lopez* (2004) 119 Cal.App.4th 355, 364.)

Here, the trial court imposed an unauthorized sentence by

staying the punishment for a prior serious felony enhancement that was not alleged in the information.  The court also erred in staying, as opposed to striking, the enhancement for Parrish's prior arson convictions.  But the court stated a sentence of 25 years to life was "more than adequate punishment" and "more than [it] would care to hand down" because of the "overarching mitigating character" of Parrish's mental illness.  Because the court " ' "clearly indicate[d]" ' " it would not impose these enhancements, remand is not required.  (*People v. Salazar* (2023) 15 Cal.5th 416, 431.)  We modify the judgment and strike the enhancements.  (§ 1260.)

*Fines and fees in abstract of judgment*

Parrish contends the abstract of judgment incorrectly reflects the trial court imposed but stayed a $7,500 restitution fine (§ 1202.4, subd. (b)), $7,500 parole revocation restitution fine (§ 1202.45), $40 court security fee (§ 1465.8), and $30 criminal conviction fee (Gov. Code, § 70373).  The Attorney General again correctly concedes.  The trial court struck these fines and fees because it found Parrish did not have the ability to pay.  Because the oral pronouncement of a sentence controls over the abstract of judgment (*People v. Hamed* (2013) 221 Cal.App.4th 928, 937–938), we order the trial court to correct the abstract of judgment.

DISPOSITION

We modify the judgment (§ 1260) and strike the stayed punishments for the enhancements for a prior serious felony (§ 667, subd. (a)) and prior felony arson convictions (§ 451.1, subd. (a)(1)).  We also strike the $7,500 restitution fine (§ 1202.4, subd. (b)), $7,500 parole revocation restitution fine (§ 1202.45), $40 court security fee (§ 1465.8), and $30 criminal conviction fee (Gov. Code, § 70373).  The clerk of the superior court shall

11

prepare an amended abstract of judgment striking these enhancements and fines and fees and send a certified copy to the Department of Corrections and Rehabilitation.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

_____

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kim Aarons and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.